**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Respondent/Plaintiff,

v.                                            CV 10-0437 WJ/WPL
                                                 CR 07-0615 WJ

RAUL PARRA,

       Movant/Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Raul Parra pled guilty, pursuant to a plea agreement, to mail fraud and conspiracy to commit mail fraud in connection with the construction of the Metropolitan (or "Metro") Court building in Bernalillo County, New Mexico. (Doc. 610.)[1] He was sentenced to a total of 46 months in prison and ordered to pay a fine of $10,000 and restitution in the amount of $601,532.28. (Doc. 825.) Parra has now filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Doc. 914.) For the reasons that follow, I recommend that the motion be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

The plea agreement sets forth the factual basis for Parra's plea. By signing the agreement, Parra admitted, among other things, the following facts under penalty of perjury. (Doc. 610 at 3-4.) Parra approached the owner of Integrated Control Systems (ICS) to see if ICS would be interested in being the prime contractor on a contract to install an audiovisual system in the Metro Court building. ICS, through its owner, agreed to submit a proposal to be prime contractor on the contract. Parra suggested that ICS use a company owned by Manuel Guara as a subcontractor. (*Id.* at 4.)

---

[1] All document number references are to CR 07-0615 WJ.

Parra and Guara agreed that Guara would receive $100,000 in exchange for sending inflated invoices to ICS and then remitting the payments for the inflated portion to Parra. Pursuant to this agreement, Guara gave Parra approximately $3.3 million in proceeds from the fraudulent overbilling. (*Id.*) Toby Martinez, the Metro Court administrator, instructed Parra to transfer some of the proceeds from the fraudulent overbilling to Manny Aragon to compensate Aragon for his role, as a state senator, in securing funding for the contract. Parra told Martinez that he "would have Aragon invoice [Parra] for consulting or legal services to make it appear that there was a legitimate purpose for the payments." (*Id.* at 5.) Parra transferred approximately $650,000 of the proceeds to Aragon. Although Aragon had provided legal services to Parra in the past, he "did not provide anywhere close to $600,000.00 worth of legal services." (*Id.*) Parra also paid Martinez approximately $1.9 million from the proceeds of the fraudulent overbilling, and Martinez paid Parra approximately $700,000 of the proceeds. (*Id.*)

Parra was indicted in March 2007. (Doc. 1.) The 28-count fourth superseding indictment charged Parra, Martinez, Aragon, and others with mail fraud, money laundering, and conspiracy to commit mail fraud and money laundering. (Doc. 567.) In his plea agreement, Parra agreed to plead guilty to counts one, six, and ten of the fourth superseding indictment. (Doc. 610 at 2.) Count one charged a conspiracy predicated on mail fraud as defined in 18 U.S.C. §§ 1341 and 1346 and on money laundering as defined in 18 U.S.C. § 1956(a)(1). (Doc. 567 at 4-5.) Counts six and ten charged mail fraud as defined in 18 U.S.C. §§ 1341 and 1346. (*Id.* at 20-22.)

### COUNSEL'S PERFORMANCE

Aragon hired former New Mexico Supreme Court Justice Gene Franchini as an expert witness. Franchini planned to testify that the fee arrangements between Aragon and Parra were legitimate, reasonable, and ethical. (Doc. 371, Doc. 471 Attachment at 1.) Franchini testified at a

2

*Daubert* hearing that he based his opinion partly on an interview he conducted with Parra. (Doc 677 at 18.) After the *Daubert* hearing, both Parra and Aragon entered into plea agreements. (Doc. 610, 611.) During their sentencing hearings, Judge Johnson concluded that Parra's and Aragon's offense levels under the sentencing guidelines should be increased by two for obstruction of justice. (Doc. 838 at 27-29; Doc. 839 at 44-46.) The prosecution had not sought any increase for obstruction of justice, but the increase was included in the presentence reports (PSR). (Doc. 839 at 40-41.) It was based on the determination that Parra had provided materially false information to Franchini, who then relied on that information in forming his expert opinion. (Doc. 838 at 27-29; Doc. 839 at 44-45.)

Parra contends that his attorney should not have advised him to provide information to Franchini. He claims that his attorney asked him to provide the information in support of Aragon's defense. He further claims that his attorney excused himself for part of the interview, leaving Parra alone with Franchini and Aragon's attorney. After the *Daubert* hearing, Parra's attorney advised him to plead guilty. When Parra met with a probation officer following the plea hearing, the officer stated that Judge Johnson had instructed him to include a two-level increase for obstruction of justice in the PSR because of the testimony at the *Daubert* hearing. Parra's attorney failed to warn Parra that his sentence might be increased for obstruction of justice if he provided information to Franchini. Parra claims that if he had been aware of this possibility, he would not have submitted to the interview. Parra argues that he did not stand to benefit from providing information in support of Aragon's defense and he believes that his attorney placed his desire to help Aragon's attorney over his duties to his client. According to Parra, his attorney and Aragon's attorney have offices in the same building and are close personal friends.

To establish ineffective assistance of counsel, Parra must satisfy a two-part test. First, he must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

Parra complains about the sentence enhancement for obstruction of justice that resulted from his cooperation with Aragon's defense expert. Accordingly, he must show that his attorney's advice to submit to the interview with Franchini was objectively unreasonable. In applying the first part of the *Strickland* test, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). Parra has not overcome this presumption.

When Franchini interviewed Parra, the defense anticipated going to trial on the Government's charges. It was not objectively unreasonable for Parra's attorney to advise him to cooperate with this aspect of Aragon's defense because it advanced Parra's defense too. As the Government points out, evidence that Parra paid Aragon for legitimate legal services would negate the money laundering charges and the overt act requirement of the conspiracy charge. Indeed, the United States argued in its motion for a *Daubert* hearing that "Franchini's proffered testimony . . . is a blatantly obvious effort to present self-serving hearsay declarations allegedly made by Aragon's co-defendant Raul Parra, and by counsel to Aragon and Parra. Franchini's 'opinions' are nothing

but regurgitation of what Parra and defense counsel told him." (Doc. 523 at 9.) From counsel's perspective at the time, this could have been a sound trial strategy.

Parra suggests in his reply that his attorney should have anticipated the increase for obstruction of justice when the plea agreement was negotiated. It does not appear, however, that any of the attorneys on either side of the Aragon and Parra plea negotiations contemplated this increase. It does not even appear that the probation department instigated the increase. According to Parra, the impetus came from Judge Johnson. Parra's attorney was not ineffective for failing to expect an increase that was not sought by either the prosecution or the probation department.

Moreover, Parra is attempting to shift the blame for his own untruths to his attorney. *See Tyson v. Keane*, 159 F.3d 732, 736 (2d Cir. 1998) (rejecting ineffective assistance claim because "[t]he principal reason why the 'wrong' defense strategy was pursued . . . was . . . [the defendant's] own conduct, whether characterized charitably as lack of candor or as a lie"). The information Parra provided to Franchini indicated that his payments to Aragon were legitimate. Yet he admitted in his plea agreement that he had Aragon supply invoices for "legal services to make it appear that there was a legitimate purpose for the payments" and that Aragon "did not provide anywhere close to $600,000.00 worth of legal services." (Doc. 610 at 5.)

Having failed to show that his attorney's advice was objectively unreasonable, Parra cannot prevail on his claim under *Strickland*. However, a related but separate standard applies when a defendant alleges that his attorney had a conflict of interest. Because Parra seems to suggest that his counsel had a conflict of interest, I will consider his claim under that standard as well.

When a defendant first raises a conflict of interest claim during a collateral attack, he must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Mickens v. Taylor*, 535 U.S. 162, 173-74 (2002); *Workman v. Mullin*, 342 F.3d 1100, 1107 (10th Cir. 2003).

"An actual conflict of interest exists only if counsel was forced to make choices advancing interests to the detriment of his client." *Workman*, 342 F.3d at 1107 (internal punctuation omitted). The "mere theoretical division of loyalties" is insufficient. *Mickens*, 535 U.S. at 171. "Without a showing of inconsistent interests, any alleged conflict remains hypothetical, and does not constitute ineffective assistance." *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998).

Accepting as true that the attorneys for Parra and Aragon had offices in the same building and were friends, Parra has not shown that his attorney was forced to make choices advancing the interests of Aragon or his counsel to Parra's detriment. As explained above, the interests of Parra and Aragon were aligned in regard to Franchini's expert testimony. If the case had gone to trial, Parra's cooperation with Franchini could have advanced his own interests as well as Aragon's. As it turned out, Aragon and Parra suffered equally for their attempt to provide inaccurate expert testimony. On these facts, Parra cannot prevail on his conflict of interest claim.[2]

## HONEST SERVICES

In counts six and ten of the indictment, Parra was charged with both "garden variety" mail fraud under 18 U.S.C. § 1341 and with "honest services" mail fraud under 18 U.S.C. § 1346. Similarly, count one—the conspiracy count—was predicated on both 18 U.S.C. § 1341 and 18 U.S.C. § 1346. The garden variety mail fraud statute defines mail fraud with reference to "any scheme or artifice to defraud." 18 U.S.C. § 1341. The honest services mail fraud statute further

---

[2] In his reply, Parra asserts the United States has violated the plea agreement by arguing, in response to his § 2255 motion, that increasing the offense level was appropriate. According to Parra, the plea agreement indicates that an enhancement for obstruction of justice is not applicable. Although the agreement states that two other enhancements are not applicable, obstruction of justice is never mentioned in the agreement.

defines "scheme or artifice to defraud" to include "a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

Although counts six and ten cited both 18 U.S.C. § 1341 and 18 U.S.C. § 1346, the plea agreement stated that Parra was pleading guilty to "Frauds and Swindles (Mail Fraud) in violation of 18 U.S.C. § 1341 in Counts Six and Ten." (Doc. 610 at 2.) The clerk's minutes from the plea hearing reflect that Parra would "not admit to the factual bases re 'Honest Government Services' and reserves right to argue that at sentencing." (Doc. 604.)[3]

In the plea agreement, Parra also reserved the right to argue that the applicable sentencing guideline was § 2B1.1, as well as the right to appeal his sentence if the court refused to apply this section. (Doc. 610 at 9, 12.) Section 2B1.1 applies generally to fraud offenses, and § 2C1.1 applies to fraud involving the deprivation of the intangible right to honest services from public officials. At the sentencing hearing, Parra's attorney argued that § 2C1.1 does not apply because Parra is not a public official with a fiduciary duty to the citizens of New Mexico. (Doc. 839 at 7-12.) Agreeing with the prosecution and with the approach taken in the PSR, Judge Johnson held that § 2C1.1, rather than § 2B1.1, is applicable. (*Id.* at 19-21.) Although he expressly reserved the right to appeal on this issue, Parra did not file a direct appeal.

In his § 2255 motion, Parra asserted that his "conviction on 18 USC § 1346 should be vacated upon that [sic] argument that § 1346 is void for vagueness." (Doc. 914 (Ground Two - Page 1).) He noted that the Supreme Court was considering a vagueness challenge to the statute. At the conclusion of his argument on this issue, he stated, "It should also be noted that the validity and applicability of 18 USC § 1346 makes a substantial difference to the sentencing guidelines imposed

---

[3] The judgment states that Parra was convicted of "Frauds and Swindles (Mail Fraud)" under both 18 U.S.C. § 1341 and 18 U.S.C. § 1346. (Doc. 825.)

upon [him]." (*Id.*) Parra contended that if the statute is void, then his sentence would be calculated under § 2B1.1 of the guidelines instead of § 2C1.1.

After Parra's § 2255 motion was filed, the Supreme Court issued its decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010). The Court held in *Skilling* that 18 U.S.C. § 1346 is not unconstitutionally vague as long as it is "[i]nterpreted to encompass only bribery and kickback schemes." 130 S. Ct. at 2933. The Court acknowledged that "[r]eading the statute to proscribe a wider range of offensive conduct . . . would raise the due process concerns underlying the vagueness doctrine." *Id.* at 2931.

In its response to Parra's 28 U.S.C. § 2255 motion, the United States argued, among other things, that Parra's vagueness argument is procedurally defaulted and that it fails on the merits under *Skilling* because Parra was unquestionably involved in a kickback scheme in which public officials Aragon and Martinez received proceeds from contracts regarding construction of the Metro Court building.

In his reply to the Government's response, Parra clarifies that he "is not attempting to collaterally attack his conviction on the counts of mail fraud." (Doc. 920 at 3.) Instead, he "is merely desiring to attack the sentencing guidelines applied to him at his sentencing." (*Id.* at 5.) He goes on to argue that § 2B1.1, rather than § 2C1.1, applies to his case. Parra further argues that this issue has not been procedurally defaulted because *Skilling* was not decided until after the time for an appeal had expired.

With the exception of ineffective assistance claims, courts generally will not consider a claim raised in a § 2255 motion if that claim was not raised on direct appeal. *United States v. Harms*, 371 F.3d 1208, 1211 (10th Cir. 2004); *see also United States v. Frady*, 456 U.S. 152, 165 (1982). This

rule does not apply if the defendant can demonstrate "cause and prejudice." *Harms*, 371 F.3d at 1211.

An intervening change in the law can constitute cause to excuse a procedural default. *See, e.g., Dutton v. Brown*, 812 F.2d 593, 596 (10th Cir. 1987). Before 18 U.S.C. § 1346 was enacted, appellate courts had interpreted 18 U.S.C. § 1341 to criminalize schemes to deprive others of the right to honest services. *See Skilling*, 130 S. Ct. at 2926-27. In *McNally v. United States*, 483 U.S. 350 (1987), the Supreme Court rejected this interpretation of § 1341. *See id.* at 2927 (discussing *McNally*).[4] The Tenth Circuit held that *McNally* must be given retroactive effect in proceedings under 28 U.S.C. § 2255 and that the decision represented such a break with existing law that a defendant pursuing relief under § 2255 had cause for failing to raise the issue at trial or on appeal. *United States v. Shelton*, 848 F.2d 1485, 1488-90 (10th Cir. 1988). I will assume that the Tenth Circuit's reasoning would apply equally to the Supreme Court's decision in *Skilling*. To the extent that Parra is arguing that *Skilling* provides a new basis for challenging his sentence, I will consider his argument on the merits.

However, the theory underlying *Dutton* and *Shelton* was that a party should be excused from failing to make arguments that have no basis in existing law. Parra actually raised the applicability of § 2B1.1 of the sentencing guidelines at the sentencing hearing and he expressly reserved the right to appeal if the Court refused to apply that section. Accordingly, to the extent that he is now re-asserting arguments that his attorney made at sentencing, I conclude that those arguments were procedurally defaulted when Parra failed to appeal. Furthermore, the only argument Parra raised in his § 2255 motion regarding sentencing was that his sentence would be reduced if § 1346 is void

---

[4] Congress responded to *McNally* by enacting § 1346. *Skilling*, 130 S. Ct. at 2927.

9

for vagueness. To the extent that Parra raises different arguments in his reply, those arguments are not properly before me. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

It is difficult to discern exactly why Parra believes that *Skilling* supports his claim that § 2B1.1, rather than § 2C1.1, applies to his case. *Skilling* did not discuss sentencing in general or these guidelines in particular. Parra admitted to participating in a kickback scheme involving public officials. Since the Supreme Court held that § 1346 is constitutional as applied to kickback schemes, *Skilling* seems to support the Court's decision to apply § 2C1.1.

Moreover, the First Circuit has rejected an argument, similar to the argument made by Parra's counsel at sentencing, that *Skilling* limits § 1346 prosecutions to officials who owe a fiduciary duty to the public. *See United States v. Urciuoli*, ___ F.3d ___, ___, 2010 WL 2814311, at *5 (1st Cir. July 20, 2010). The appellant read *Skilling* to "narrow the mail fraud statute in honest services cases to cover only the party to a bribe who owes a fiduciary duty to the public." *Id.* This reading was based on one isolated comment in *Skilling* that "[t]he vast majority of the [pre-*McNally*] honest-services cases involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes." 130 S. Ct. at 2930 (internal quotation marks omitted). The First Circuit stated:

> The sentence in *Skilling* relied upon by Urciuoli was merely identifying bribe and kickback cases as core honest services violations, distinguishing some less established scenarios to which some lower courts had extended the concept; nothing in *Skilling*'s language or context suggests that the Court was distinguishing between the fiduciary who received the bribe and the non-fiduciary who gave it, a distinction that would conflict with the statute's language embracing those who participate in "any scheme . . . to defraud."

*Urciuoli*, ___ F.3d at ___, 2010 WL 2814311, at *6 (citing 18 U.S.C. § 1341).

In short, I can find nothing in *Skilling* to indicate that the Court erred in applying § 2C1.1 when sentencing Parra.

10

## LOSS AMOUNT

In the plea agreement, Parra stipulated that the loss amount attributable to him was between $400,000 and $1,000,000. (Doc. 610 at 8-9.) The United States agreed that the Court should consider the amount by which Parra benefitted from his conduct, which the parties estimated to be approximately $700,000. (*Id.* at 14.) Parra reserved the right to argue that this amount should be offset by the amount of taxes that he paid. (*Id.*)

In his objections to the PSR, Parra did not object to the lack of an offset for taxes paid, but he did seek a credit for the value of the audiovisual system. (*See* Doc. 839 at 51-52.) At the sentencing hearing, Judge Johnson did not seem to view this objection favorably. He noted that the chief judge of the Metro Court submitted a letter indicating that the scandal surrounding the building's construction "cast a shadow" over the court. (*Id.* at 53.) He also noted that the Metro Court had expended a tremendous amount of resources in responding to the FBI and to subpoenas and document requests. (*Id.* at 53-54.) Judge Johnson concluded by stating, "Somehow, whatever increment[al] value for this audiovisual system that's supposedly so great I think would be offset by all the aggravation and the hassle that the metro court has had to go through. That's my opinion." (*Id.* at 54.) Seeing the writing on the wall, counsel withdrew the request for the credit. (*Id.*)

Parra now contends that the loss amount attributed to him was overstated. As a result, he was ordered to pay too much restitution and given a longer sentence than he otherwise would have received. Parra complains that he was not given credit for the value he provided, for the state and federal income taxes he paid on his profits, or for unspecified "costs." (Doc. 914 (Ground Three - Page 1).) He argues that if he were only given credit for his income taxes, the loss amount would be reduced by approximately $250,000. Parra contends that the taxpayers will be unjustly enriched if this amount is not deducted from the restitution award. He also argues that a reduction in the loss

amount would result in a two-level reduction of his offense level under the sentencing guidelines. In his reply, however, Parra argues that "he is not seeking to attack the loss amount for purposes of his term of imprisonment, rather he seeks a proper modification of the restitution amount assessed to him at sentencing." (Doc. 920 at 4.)

Parra claims that his attorney acted without his permission in failing to follow through with the arguments for credits for taxes and services provided. Since this arguably raises an allegation of ineffective assistance, Parra's requests for offsets are arguably not procedurally defaulted. *See Harms*, 371 F.3d at 1211 (stating that a meritorious claim of ineffective assistance of counsel constitutes cause and prejudice). Nevertheless, Parra's arguments fail because a restitution order cannot be challenged in a § 2255 motion. *United States v. Satterfield*, 218 F. App'x 794, 796 (10th Cir. 2007) (citing *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003)).

Furthermore, there is no merit to Parra's request for credits. Judge Johnson's comments during the sentencing hearing demonstrate why his request for an offset for the value of his services was properly rejected. As for a credit for income taxes, one of Parra's co-defendants argued for such a credit. In a written opinion, Judge Johnson found himself "entirely unconvinced by this argument." (Doc. 823 at 7.) He stated, "A thief is entitled to no credit for how he chooses to spend purloined money, whether he gives it all to charity or uses it to pay taxes." (*Id.* (quoting *United States v. Stewart*, 321 F. Supp. 2d 652, 657 (D. Md. 2004)).) This ruling was affirmed by the Tenth Circuit. *See United States v. Martinez*, ___ F.3d. ___, ___, 2010 WL 2559807, at *13 (10th Cir. June 28, 2010).

## CONCLUSION

For the reasons stated above, I recommend that Parra's motion under 28 U.S.C. § 2255 be denied. I further recommend that a certificate of appealability not be issued because Parra has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c).

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE